UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ANDREA FAVELA, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| vs. | ) | Judge |
| | ) | Magistrate Judge |
| JEFFREY BOYD, | ) | |
| ROCK ISLAND | ) | |
| SHERIFF'S DEPARTMENT, and | ) | Jury Demand |
| ROCK ISLAND COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.   This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the common law and statutes of the State of Illinois.

2.   Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4.   Plaintiff Andrea Favela is a resident of Rock Island county.

5.   At all relevant times, Defendant Jeffrey Boyd was the Sheriff of Rock Island County, acting in the scope of his employment and under color of law. Boyd is sued in his individual capacity.

6.   At all relevant times, the Rock Island Sheriff's Department was the employer and principal of Defendant Boyd.

### Facts

7.   Plaintiff Andrea Favela and Defendant Jeffrey Boyd met at Depaepe's Gym located in Rock Island, Illinois.

8.   Both went to the gym often.

9. Defendant Boyd had a romantic interest in Ms. Favela.

10. Sometime in about June or July of 2013, Defendant Boyd left a note on Ms. Favela's car when it was parked outside of Depaepe's Gym.

11. Soon after that, Boyd told Ms. Favela that he could help her.

12. Boyd asked Ms. Favela for her phone number, and she gave it to him.

13. Then Boyd starting texting Ms. Favela frequently.

14. Boyd got angry when Ms. Favela did not reply.

15. Boyd called and asked Ms. Favela if she was stupid because she did not know how to reply to texts.

16. Boyd asked Ms. Favela out for a drink. Ms. Favela declined.

17. Sometime in around November of 2013, while at Depaepe's Gym, Boyd told Ms. Favela that he had a traffic ticket for her.

18. Then Boyd said he was just joking, and explained that he actually had some gifts for her.

19. That day Boyd left Ms. Favela a gift (a sweatshirt and a pair of shoes) on her car parked outside of Depaepe's Gym.

20. For Christmas of 2013, Boyd gave Ms. Favela some steaks as a gift.

21. In January of 2014, Boyd gave Ms. Favela $350 to use to see doctor about her weight.

22. Ms. Favela tried to give Boyd the money back, but he refused.

23. For Valentine's Day 2014, Boyd had gifts of flowers and jewelry delivered to Ms. Favela's house.

24. Ms. Favela tried to refuse the gifts, but Boyd insisted.

25. Ms. Favela asked Boyd how he got her address.

26. Boyd told Ms. Favela that he is the sheriff and can find out lots of things.

27. Boyd started using his official authority and power as Rock Island Sheriff to threaten, intimidate and harass Ms. Favela.

28. Boyd subsequently told Ms. Favela that she can no longer go to Depaepe's Gym.

29. Boyd also told Ms. Favela that he could send her to jail for driving without a valid driver's license.

30. Part of the duties of the Rock Island Sheriff is to enforce the traffic laws, including through writing tickets, making arrests, issuing warrants, sending people to jail, and initiating criminal charges.

31. At the time, Ms. Favela was an undocumented immigrant from Mexico without a valid driver's license.

32. Ms. Favela had previously applied for a green card and was waiting for a decision.

33. Boyd subsequently told Ms. Favela that he can help with her immigration status and tried to persuade her to meet with him in person to discuss her application process.

34. On or about March 5 or 6, 2014, Ms. Favela went to Depaepe's Gym. When Boyd saw her, he flipped her the middle finger.

35. On or about March 11, 2014, Ms. Favela received a fruit basket gift with no card.

36. During this time, Boyd was constantly texting and calling Ms. Favela.

37. Ms. Favela changed her cell phone numbers so that she wouldn't receive any more harassing texts from Boyd.

38. On or about Saturday, March 15, 2014, Boyd parked outside of Ms. Favela's house.

39. Boyd was in his undercover sheriff's vehicle, a black Dodge Durango, while parked outside Ms. Favela's home.

40. When Ms. Favela left home to drive to work, Boyd activated the emergency lights on his undercover sheriff's vehicle and stopped Ms. Favela.

41. Boyd pulled up next to Ms. Favela and spoke to her through the window.

42. Boyd told Ms. Favela that the next time he stopped her she would go to jail for driving without a license.

43. On or about the next Saturday, March 22, 2014, Ms. Favela again saw Boyd parked outside her home at about the time she would normally leave to go to work.

44. On that date, Ms. Favela's sister drove Ms. Favela to work.

45. When they left, Boyd pulled out really fast and began to follow them.

46. Once again, Boyd was driving his undercover sheriff's vehicle, the black Dodge Durango.

47. On or about March 24, 2014, Ms. Favela received another fruit basket, this one came with a note that said, "Keep doing the right thing, proud of you."

48. On or about April 2, 2014 (possibly April 4), because of Boyd's harassment and threats, Ms. Favela cancelled her membership and stopped going to Depaepe's Gym.

49. On or about April 2, 2014 (possibly April 4), Boyd asked for and received Ms. Favela's new cell phone number from an employee at Depaepe's Gym.

50. After that, Boyd started harassing Ms. Favela again with phone calls and text messages.

51. Boyd attempted to get Ms. Favela to agree to meet him in person.

52. On or about April 4, 2014, Boyd texted Ms. Favela: "Final thing figure out your ticket with me or it will be a warrant with everything I have documented in the last 18 months."

53. On or about April 4, 2014, Boyd sent deputy Baney to Ms. Favela's place of work to give her a ticket for driving without a license.

54. When approached by Baney, Ms. Favela did not accept the ticket and did not sign for it.

55. On April 11, 2014, Ms. Favela made a complaint with the Moline Police Department, explaining how Boyd had been stalking her, harassing her, and threatening to send her to jail.

56. On or about April 25, 2014, Boyd sent Ms. Favela a text stating: "The ticket I wrote that you refused to sign, the court date is approaching quickly."

57. There was no approaching court date.

58. The ticket Boyd was referring to was never filed with the court or clerk's office.

59. Boyd claims that he observed Ms. Favela illegally driving on May 14, 2014, while he was stalking her.

60. At some point after that, Boyd wrote Ms. Favela a ticket but never filed it or

4

served it on her.

61. In a later interview with the Illinois State Police, Boyd claimed that Ms. Favela was fleeing and eluding and bailed out when he observed her on May 14, 2014.

62. Boyd further explained that people who flee and elude and bail like that are dirty and have dope.

63. Boyd also told the Illinois State Police that he believed Ms. Favela was involved in drug dealing.

64. On or about June 2, 2014, Boyd sent Ms. Favela a text message calling her an "ugly bitch."

65. On or about June 6, 2014, Boyd sent Ms. Favela a text message in Spanish calling her a "fucking ugly whore."

66. Defendant Boyd acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

67. As a direct and proximate result of the acts described above, Plaintiff suffered damages including emotional distress.

## COUNT I
### (42 U.S.C. § 1983 – Substantive Due Process)

68. Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

69. The above-described conduct constituted an arbitrary and egregious abuse of government power that shocks the conscience.

70. The above-described conduct was objectively unreasonable and undertaken with malice and a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant Boyd,

b) Award Plaintiff compensatory and punitive damages,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Equal Protection)

71. Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

72. As described above, Defendant Boyd denied Plaintiff equal protection of the law in violation of her constitutional rights.

73. Boyd's misconduct was motivated by gender animus and constitutes purposeful discrimination.

74. Boyd intentionally treated Plaintiff differently than others similarly situated.

75. The above-described conduct was objectively unreasonable and undertaken with malice and a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant Boyd,

b) Award Plaintiff compensatory and punitive damages,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### (State Law Claim for Willful and Wanton Conduct)

76. Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

77. The above-described conduct was objectively unreasonable and undertaken with malice and a reckless indifference to the rights of others.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant Boyd,

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### (State Law Claim for Intentional Infliction of Emotional Distress)

78. Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

79. Defendant Boyd's conduct was extreme and outrageous.

80. Boyd intended to cause Plaintiff severe emotional distress, or knew that there was a high probability that his conduct would cause Plaintiff severe emotional distress.

81. Boyd's conduct caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant Boyd,

b) Award compensatory damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT V
### (State Law *Respondeat Superior* Claim)

82. The acts of Defendant Boyd in the above state-law claims were willful and wanton, and committed in the scope of employment.

83. Pursuant to *respondeat superior*, Defendant Rock Island Sheriff's Department is liable for its agents' actions.

WHEREFORE, Plaintiff demands judgment against Defendant Rock Island Sheriff's Department, and such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VI
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

84. The acts of Defendant Boyd in the above claims were willful and wanton, and committed in the scope of employment.

85. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant Rock Island County is liable for any judgments for compensatory damages in this case arising from Defendant Boyd's actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant Rock Island County to indemnify Defendant Boyd for any judgment for compensatory damages in this case arising from his actions.

**Jury Trial Demanded**

Respectfully submitted,

/s/ Lawrence Jackowiak
*Counsel for the Plaintiff*

/s/ Amanda Yarusso
*Counsel for the Plaintiff*

Lawrence Jackowiak
Amanda Yarusso
Jackowiak Law Offices
111 W Washington St
Suite 1500
Chicago, Illinois  60602
(312) 795-9595