UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANDREA FAVELA,                        )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )   Case No. 15-4028
                                      )
JEFFREY BOYD, ROCK ISLAND             )
SHERIFF'S DEPARTMENT, and ROCK        )
ISLAND COUNTY,                        )
                                      )
        Defendants.                   )

# O R D E R

This matter is now before the Court on Defendant Jeffrey Boyd's Rule 12(b)(6) Motion to Dismiss. For the reasons set forth below, the Motion [22] is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**[1]

Plaintiff, Andrea Favela ("Favela"), and Defendant Jeffrey Boyd ("Boyd") met at Depaepe's Gym in Rock Island, Illinois. At the time, Boyd was the Sheriff of Rock Island County and developed a romantic interest in Favela, who at the time was an undocumented immigrant from Mexico awaiting issuance of her green card. In summer 2013, Boyd left a note on Favela's parked car. He later asked her for her phone number and began texting her. When Favela did not respond, Boyd became angry. He asked her out for a drink; she declined.

In November 2013, Boyd told Favela that he had a traffic ticket for her, but then claimed that he was just joking and said that he actually had some gifts for her. Boyd then left a

---

[1] Unless specifically noted, the following factual allegations are taken from the Complaint.

sweatshirt and a pair of shoes on her car parked outside the gym. For Christmas that year, Boyd gave her some steaks as a gift.

The gifts continued in 2014. In January 2014, Boyd gave Favela $350 to use to see a doctor about her weight. For Valentine's Day, he sent flowers and jewelry to her home. Favela tried to refuse or return the gifts, but Boyd refused. She asked how he got her home address, to which he replied that he was the sheriff and could find out lots of things.

Favela alleges that Boyd started using his power and authority as sheriff to intimidate and harass her. He was constantly texting and calling Favela and told her: (1) that she could no longer go to Depaepe's Gym; (2) that he could send her to jail for driving without a valid driver's license; and (3) that he could help with her immigration status if she met with him in person. When Boyd saw Favela at the gym on three occasions in March 2014, he made rude hand gestures toward her. On March 11, she received a fruit basket gift with no card. Favela changed her cell phone number so she wouldn't receive any more calls or texts from Boyd.

On March 15, 2014, Boyd parked outside Favela's house in his unmarked sheriff's vehicle. When she left home to drive to work, Boyd activated the emergency lights and stopped her. He told her that the next time he stopped her, she would go to jail for driving without a license. On March 22, 2014, Favela again saw Boyd parked outside her house about the time she would normally leave for work, so her sister drove her that day. When they left, Boyd pulled out quickly and began to follow them in his unmarked sheriff's vehicle. A few days later, Favela received another fruit basket with a note stating, "Keep doing the right thing, proud of you."

In early April 2014, Favela cancelled her membership at Depaepe's Gym. Boyd obtained her new cell phone number and resumed calling and leaving text messages attempting to get her to meet him in person. On April 4, 2014, Boyd texted Favela stating, "Final thing figure out your

ticket with me or it will be a warrant with everything I have documented in the last 18 months." Boyd then sent Deputy Baney to Favela's place of work to give her a ticket for driving without a license. Favela did not accept or sign for the ticket.

On April 11, 2014, Favela complained about Boyd's conduct to the Moline Police Department. On April 25, 2014, she received another text from Boyd stating, "The ticket that I wrote that you refused to sign, the court date is approaching quickly." However, the ticket Deputy Baney attempted to deliver to Favela was never filed with the court or clerk's office, and no court date was pending.

Boyd claims that he observed Favela driving illegally on May 14, 2014. He wrote her another ticket, but again never filed it or served it on her. He sent another text message on June 2, 2014, calling Favela an "ugly bitch," followed by another text message on June 6, 2014, calling her a "fucking ugly whore" in Spanish.

On March 13, 2015, Favela filed the present Complaint pursuant to 42 U.S.C. § 1983 and state law. Boyd has now moved to dismiss the Complaint for failure to state a claim. The matter is fully briefed, and this Order follows.

## LEGAL STANDARD

A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). This means that (1) the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

"speculative level." *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007); *Twombly*, 550 U.S. at 555. Conclusory allegations are "not entitled to be assumed true." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951-53 (2009) (citing *Twombly*, 550 U.S. 544 (2007)).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

**ANALYSIS**

Initially, the Court notes that Boyd seeks dismissal of the prayer for punitive damages asserted against him in Counts III and IV based on the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/22-102. Plaintiff concedes this argument and does not object to striking her claims for punitive damages from Counts III and IV.

Boyd next argues that Favela has failed to plead any individual capacity claims against him, as the allegations indicate alleged misconduct by him while he was the Rock Island County Sheriff. In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the United States Supreme Court articulated the difference between individual (or personal) capacity suits and official capacity suits. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.,* at 165–66. The Court further explained the different standards for establishing liability, depending on the capacity implicated: "[T]o establish personal liability in a

4

§ 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.... More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Id.,* at 166.

Here, the conduct alleged in the Complaint is a classic example of an individual capacity claim. There is no suggestion that official policy dictated Boyd's actions or that the Sheriff's Department had a custom of harassing undocumented, female immigrants. To the contrary, the allegations suggest that Boyd misused his official power for personal reasons after Favela did not reciprocate his interest. Whether an official entity may ultimately be responsible for indemnification does not otherwise transform the nature of the allegations, and Boyd's argument to the contrary is without merit.

Boyd next contends that there are insufficient allegations to support a claim for violation of Favela's equal protection rights as she has failed to allege any facts establishing that his actions were purposeful and motivated by her gender. The allegations of the Complaint sound in the nature of sexual harassment, clearly claiming that he began harassing and attempting to intimidate her after she rebuffed his interest in a romantic relationship with her. This demonstrates both harassment and an intent to harass based on Favela's gender. *King v. Board of Regents of Univ. of Wis. System*, 898 F.2d 533, 537 (7th Cir. 1990) (holding that sexual harassment is sufficient to demonstrate an equal protection violation.) Accordingly, Defendant's Motion must be denied in this respect, as well.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss [22] is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED with respect to the prayer for punitive damages asserted in Counts III and IV, and DENIED in all other respects.

ENTERED this 28th day of July, 2015.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge
