## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

ANDREA FAVELA,        )
       )
       Plaintiff,        )
       )
       v.        )    Case No. 15-cv-4028-JES-JEH
       )
JEFFREY BOYD, ROCK ISLAND        )
COUNTY, and the SHERIFF OF ROCK        )
ISLAND COUNTY,        )
       )
       Defendants.        )

## ORDER

This matter is now before the Court on Plaintiff Andrea Favela's Motion (Doc. 159) for Partial Judgment as a Matter of Law or a Partial New Trial. Defendants Rock Island County and the Sheriff of Rock Island County filed a Response (Doc. 162) to Plaintiff's Motion. Defendant Boyd also filed a Response (Doc. 166) to Plaintiff's Motion. For the reasons set forth below, Plaintiff's Motion is DENIED.

### BACKGROUND

On October 9, 2020, following a five-day trial, a jury returned a verdict in the favor of Plaintiff Andrea Favela and against Defendant Jeffery Boyd ("Boyd") on Plaintiff's equal protection claim and intentional infliction of emotional distress claim. The jury awarded Plaintiff $75,000 in compensatory damages and $225,000 in punitive damages. Additionally, the jury, in answering a special interrogatory, found Boyd did not act within the scope of his employment. Therefore, in effect, the jury found in favor of Defendants Rock Island County and the Sheriff of Rock Island County ("Rock Island"), and against Plaintiff on this issue. Plaintiff brings her Motion pursuant to Federal Rules of Civil Procedure 50, 59 and 60. Aside from reiterating some

language regarding the standards under these rules, Plaintiff fails to articulate the proper procedural vehicle that applies to each of her arguments.

### LEGAL STANDARD

Rule 59(a)(1) allows a courts to "grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court should grant a motion for a new trial only "if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003)). To meet this standard, the movant must demonstrate no rational jury could have rendered a verdict against them. *Woodward v. Corr. Med. Services of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004); *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008); *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). Rule 59(a) "is not merely intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 n.4 (7th Cir. 1990) (quoting *Rosera v. Int'l Harvester Co.*, 109 F.R.D. 143, 148–49 (E.D. Wis. 1986)). A court will not "set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of the evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). "The party seeking a new trial based on alleged legal errors 'bears a heavy burden.'" *Rasic v. City of Northlake*, No. 08 C 104, 2010 WL 3365918, at *6 (N.D. Ill. Aug. 24, 2010) (quoting *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001)).

2

Under Fed. R. Civ. P. 50, in considering a motion for a judgment as a matter of law, the court should grant the motion "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007). The court must assess "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Emmel v. Coca–Cola Bottling Co. of Chi.*, 95 F.3d 627, 629 (7th Cir. 1996). Such motion should be granted only where there can be one conclusion based on evidence. *McRoberts Software, Inc. v. Medial 100, Inc.*, 329 F.3d 557, 564 (7th Cir. 2003) (citing *Emmel*, 95 F.3d at 636).

As Plaintiff stated, Fed. R. Civ. P. 60 allows a court to "relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . (6) any other reason that justifies relief." Doc. 166, at 1. However, relief under Rule 60(b)(6) is an "extraordinary remedy" that should be granted only in "exceptional circumstances." *Arendovich Investments, Inc. v. NNR Glob. Logistics, Inc.*, No. 15 C 4978, 2018 WL 10809374, at *2 (N.D. Ill. Feb. 22, 2018) (citing *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666-67 (7th Cir. 2014). Motions under Rule 60(b) cannot be a general request for relief, the party must state the specific grounds for relief. *Id*. A mistake of law is not a ground for relief under Rule 60(b). *Equilease Fin. Servs., Inc. v. Fincastle Leasing, Inc.*, 305 F. App'x 291, 293(7th Cir. 2008).

### DISCUSSION

As a preliminary matter, the Court denies Plaintiff's request for any relief under Rule 60. Plaintiff did not articulate her specific grounds for relief or demonstrate any exceptional

circumstances warranting relief. The best the Court can glean from Plaintiff's brief is that she raises grounds of mistake of law. Controlling caselaw from the Seventh Circuit Court of Appeals is clear on this point: "A mistake of law should be raised in a timely Rule 59(e) motion or by way of appeal; Rule 60(b) is not a substitute for either." *Equilease Fin. Servs., Inc.*, 305 F. App'x 291, 294 (7th Cir. 2008) (citing *Stoller v. Pure Fishing Inc.*, 528 F.3d 478, 480 (7th Cir. 2008); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800–01 (7th Cir. 2000).

Plaintiff raises three grounds upon which she requests a "new trial/judgment": (1) the Court erred in dismissing Plaintiff's *Monell* claim; (2) No reasonable jury could have found Boyd was not acting within the scope of his employment; and (3) the Court erroneously ruled Rock Island was not required to indemnify Boyd. Each argument will be discussed in turn.

### 1. *Monell* Liability

In her first argument, Plaintiff asserts the Court erred in granting Rock Island's Motion for Judgment as a Matter of Law on *Monell* claim and Plaintiff is entitled to a new trial and/or judgment as a matter of law on her *Monell* claim. Doc. 159, at 11. Plaintiff argues because she prevailed on her equal protection claim at trial, she must prevail on her *Monell* claim, otherwise the jury's verdict is inconsistent.[1] *Id.* at 11. Plaintiff contends Boyd acted within his role a final policy maker when he committed the relevant conduct that formed Plaintiff's underlying constitutional claim. *Id.* at 3. In its Response, Rock Island argues Plaintiff misunderstands the requirements of a *Monell* claim and "this court correctly found Boyd was not acting in a policymaker role when he committed the tortious acts plaintiff alleges." Doc. 162, at 1.

---

[1] These two findings are not mutually exclusive. *See* Seventh Circuit Civil Pattern Instruction 7.24 "If you find that Plaintiff has proved a constitutional violation by a preponderance of the evidence, you must consider whether [*Municipality*] is [also] liable to Plaintiff. [*Municipality*] is not responsible simply because it employed [*Officer(s) or employee(s)*]." *Monell* liability is a separate inquiry.

In 2018, the Court entered an Order denying Rock Island's Motion to Dismiss the *Monell* claim before issues were further flushed out for trial, before trial testimony and evidence was presented, and before Rock Island produced evidence that Boyd "violated rather than implemented the Sheriff's policies, procedures, or customs." *See* Doc. 85, at 5-6 (citing *Auriemma v. Rice*, 957 F.2d 397, 400-01 (7th Cir. 1992)). The Parties previously agreed that Boyd had final policy making authority in some areas. Doc. 135, at 3. However, the question of whether the acts of Boyd as alleged by Plaintiff fell within those policymaking decisions remained at issue for trial. *Id.* at 4. Before trial, the Court instructed Plaintiff to "clearly define how the decisions by Boyd fall within the policymaking interests of the Sheriff's Office." *Id*. At the close of evidence at trial, among other rulings, the Court granted Rock Island's Motion for Judgment as a Matter of Law on the issue of *Monell* liability. Now, Plaintiff has again raised the issue of whether the Rock Island is subject to liability under *Monell*. The Parties have been fully heard on this issue in multiple oral arguments and briefing. Plaintiff re-raises the same arguments as she did before the Court granted judgment for Rock Island on this issue. For the reasons stated in the Court's previous ruling and for the reasons discussed below, the Court again finds Rock Island is not liable under *Monell*.

It is well-settled that *Monell* liability is not a form of *respondeat superior*. Rather, a municipality can only be held liable 'when execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under section 1983.'" *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 674–75 (7th Cir. 2009) (quoting *Monell*, 436 U.S. at 694). "Misbehaving employees are responsible for their own conduct" whereas municipalities are responsible only for their decisions and policies. *Lewis v. City of Chicago*, 496

F.3d 645, 656 (7th Cir. 2007). Plaintiff raises a *Monell* theory that Boyd, as a final policy maker, caused a constitutional deprivation. When alleging this type of theory, the inquiry is whether the individual is a policymaker 'in a particular area, or on a particular issue,' not "whether an official is a policymaker on all matters for the municipality." *Valentino*, 575 F.3d at 676 (quoting *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind.*, 183 F.3d 734, 737 (7th Cir. 1999)).

*Monell* cases often involve situations where the official's actions have a strong association with his or her government role. There is little caselaw involving an official and a private citizen where the conduct was overwhelmingly of a personal nature (i.e. interactions at a gym, gift giving, texting, and following someone in hopes of creating a romantic relationship or friendship or to "help" them with fitness goals). In searching for similar cases, the Court reviewed various cases among the circuits, cases the Court cited when it granted judgment for Rock Island on this issue, and cases cited by the Parties in their briefs. None of them compel the Court to overturn its ruling as to *Monell* liability. Nor has Plaintiff pointed to any controlling precedent on this issue that the Court misapplied.

Decisions to harass or to follow someone in hopes of establishing a personal or romantic relationship are not related to Rock Island's interest. Rock Island cannot be characterized as a moving force behind these acts. Plaintiff even pointed out that Rock Island presented evidence of Boyd's failure to follow procedures for issuing citations and conduct criminal investigations. Doc. 159, at 4. Boyd's authority with respect to law enforcement did not give him the power to violate policies related to harassment or to misuse his power for a purely personal agenda. Boyd's purported criminal investigation into Plaintiff was merely pretext for his personal agenda and it was unsubstantiated that any formal investigation was opened regarding Plaintiff. Nor does his minimal misuse of public resources to research Plaintiff or follow Plaintiff in his car rise to

*Monell* liability. Plaintiff never actually received[2] a ticket for driving without a license from Boyd and she was not arrested on criminal charges stemming from Boyd's fictious investigation. Boyd's *Alford* plea also suggests Boyd was not furthering an interest of his employer, Rock Island. None of the evidence presented demonstrates that Rock Island was a driving force in Boyd violating Plaintiff's constitutional rights. At the time the Court ruled for Rock Island there was no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff and Plaintiff has not presented anything to alter the Court's opinion. As such, Plaintiff is not entitled to a new trial or judgment in her favor on the issue of *Monell* liability.

### 2. Scope of Employment

In her second argument, Plaintiff moves for a "new trial and/judgment" on the issue of scope of employment. Plaintiff prevailed on her equal protection claim and her claim for intentional infliction of emotion distress, but the jury did not find that Boyd acted within the scope of employment when he committed the acts that formed the basis of Plaintiff's claims. Plaintiff argues the jury's finding was against the manifest weight of the evidence. *Id*. In viewing evidence in the light most favorable to the prevailing party at trial, Rock Island on this issue, the Court finds a reasonable basis exists in the record to support the verdict as to scope of employment. There is no factual or legal basis to overturn the jury's finding.

A jury verdict is entitled to substantial deference. "[T]he jury is the body best equipped to judge the facts, weigh the evidence, determine credibility, and use its common sense to arrive at a reasoned decision." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 925 (7th Cir. 2000). "Overturning a jury verdict is not something [the courts] do lightly." *Id*. Here, there was a reasonable basis for a jury to find Boyd was not acting in the scope of his employment. In

---

[2] Plaintiff misstates evidence presented at trial in asserting the Boyd issued tickets to Plaintiff. *See* Doc. 159, at 10.

addition to the evidence discussed above, evidence showed Boyd and Plaintiff met at a gym, not

when Boyd was, for example, issuing a citation, or conducting any other law enforcement

activity. Boyd did not go to the gym for law enforcement activities – like Plaintiff, he was a

member at the gym who went there to work out. Even if Boyd had met Plaintiff while enforcing

the law, their overall interactions were almost exclusively personal. Boyd admitted numerous

times that he continually contacted Plaintiff after she rebuffed him because he "wanted his friend

back." Whether his intentions were romantic or not, Boyd had been contacting Plaintiff for

months before he attempted to use the pretext of the sheriff's office to persuade Plaintiff into

meeting with him or speaking with him. No evidence showed Rock Island knew of Boyd's

inappropriate actions and disregarded them. In fact, evidence showed when Rock Island became

aware of Boyd's interactions with Plaintiff, it investigated him for official misconduct, to which

Boyd ultimately entered an *Alford* plea. To the extent any evidence supports a jury finding Boyd

did act within the scope of employment, it does not rise to level of overturning the jury verdict.

Plaintiff relies on *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004) to support her

argument regarding scope of employment and mixed motives. It is unclear how *Doe* supports

Plaintiff's request to overturn the verdict. In *Doe*, the Seventh Circuit found it was premature for

the trial court to rule on scope of employment, whereas the determination as to scope here fell

within the sole province of the jury. *See id.* at 672-73. In addition to citing *Doe*, Plaintiff makes

vague assertions regarding "undisputed evidence" but fails to provide any record citation to

many of her statements. *See* Doc. 159, at 10, 12, 13.[3] For example, Plaintiff asserts "undisputed

---

[3] "The *undisputed evidence* established these elements and Defendant's motion should have been denied" ; "It is *undisputed* that Boyd drove his Sheriff's vehicle, issued traffic tickets, threatened arrest, and otherwise used his access to law enforcement authority to pursue and harass Plaintiff."; "The *undisputed evidence* showed that Boyd was conducting an investigation into Plaintiff's alleged criminal activity and he took law enforcement action to do so."; "In other words, Boyd's law enforcement conduct was what injured Plaintiff and formed the basis for her claims. This was established by the *undisputed evidence*."

evidence showed that Boyd was conducting an investigation into Plaintiff's alleged criminal activity." *Id.* at 12. This statement mischaracterizes the evidence presented at trial. Neither party presented evidence of Rock Island County initiating a criminal investigation into Plaintiff. Boyd merely made fantastical statements to Plaintiff that he was doing this. In most of her statements, Plaintiff does not point the Court to any particular witness' general testimony or evidence, even though Plaintiff clearly had access to testimony from the transcripts she attached to her brief.

The jury was also free to make credibility determinations in viewing the evidence and witnesses. In doing so, it can be assumed that any conflicts between the parties' testimony were resolved by the jury in favor of the prevailing party. *Kapelanski*, 390 F.3d at 531. The jury could have chosen to discredit Boyd's self-serving statements that he was working as Sheriff 24 hours a day, 7 days a week or that Boyd believed Plaintiff was engaged in criminal activity. These are just some examples of evidence the jury could have considered in its finding that Boyd was not acting within the scope of his employment. After five days of trial, the jury concluded just that, and the Court finds there was a reasonable basis to support the jury's determination. Accordingly, Rock Island remains not liable for Boyd's actions.

### 3. Indemnification

Plaintiff's final argument strangely asks the Court to reconsider its August 28, 2018 ruling on indemnification even though Plaintiff's request for indemnification remained viable through trial. Plaintiff argues the Court erred in dismissing Plaintiff's claims under 55 Ill. Comp. Stat. Ann. 5/5-1002 even though "Plaintiff's indemnification claim was not brought pursuant to Section 5-1002." Doc. 159, at 16. Plaintiff argues such ruling was a *manifest error of the law* because Plaintiff brought her claim under the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. Ann. 10/9-102. *Id.* at 14. Plaintiff's argument regarding the Court's prior Order on the

application of § 5-1002 is nonsensical. *See* Doc. 85. Plaintiff completely disregards the Court's ruling in the same Order that held "the Defendants' Motion to Dismiss the Plaintiff's indemnification claim pursuant to the Tort Immunity Act is DENIED" and "Count VI, her indemnification claim against the Sheriff for Boyd's actions, pursuant to the Tort Immunity Act, remains." *Id.* at 8-9. As such, there is no basis for the Court to *reconsider* its prior ruling.

Although the procedural basis is not clear, Plaintiff further argues she is entitled to reversal on the Court's finding as to indemnification because "judgment has been entered against Defendant Boyd for his conduct while serving as Sheriff of Rock Island County." Doc. 159, at 14. Plaintiff asserts an Illinois appellate court's decision in *Brown v. King*, 767 N.E.2d 357 (Ill. App. Ct. 2001) supports her position that Rock Island must indemnify Boyd for his willful conduct. In its Response, Rock Island argues indemnification is impossible due to the jury's finding that Boyd acted outside of the scope of his employment. Doc. 162, at 7.

The Court agrees that Plaintiff's argument overlooks the jury's finding on scope of employment and misreads the Tort Immunity Act. Plaintiff is not entitled to reversal simply because judgment was entered against Boyd on Plaintiff's claims. The Tort Immunity Act requires more than Plaintiff suggests. As the Court stated in its previous Order, "under Illinois law, the Tort Immunity Act also requires that municipal employees' acts be within the scope of their employment for them to be indemnified. (D. 82-1 at pg. 11) (citing *Wright v. City of Danville*, 675 N.E. 2d 110, 117-118 (Ill. 1996))." Doc. 85, at 8. Pursuant to § 9-102, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee *while acting within the scope of his employment* is liable in the manner provided in this Article." 745 Ill. Comp. Stat. Ann. 10/9-102. The plain language of the statute requires that the employee

act within the *scope of employment*. Moreover, Plaintiff's reliance on *Brown* is misplaced because *Brown* addressed whether a sheriff can be liable for his deputies' willful and wanton misconduct in addition to negligent misconduct. Regardless of whether Boyd's conduct was willful, it must be within the scope of employment to trigger mandatory indemnification on the municipality – the jury found it was not within the scope. Due to the jury's finding, the Tort Immunity Act is no longer an applicable basis for Rock Island to indemnify Boyd for his actions.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion (Doc. 159) for Partial Judgment as a Matter of Law or a Partial New Trial is DENIED.

Signed on this 2nd day of December, 2020.

s/James E. Shadid
James E. Shadid
United States District Judge