UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREA FAVELA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cv-4028-JES-JEH |
| | ) |
| JEFFREY BOYD, ROCK ISLAND | ) |
| COUNTY, and the SHERIFF OF ROCK | ) |
| ISLAND COUNTY, | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on Plaintiff Andrea Favela's Petition (Doc. 172) for Attorneys' Fees, Defendants Rock Island County and Sheriff of Rock Island County's (collectively, "RICSO") Motion (Doc. 174) for Clarification of Plaintiff's Fee Petition, and Plaintiff's Response (Doc. 175) to RICSO's Motion. RICSO's Motion (Doc. 174) is GRANTED and the Court will consider Plaintiff's Response (Doc. 175) in ruling on her Petition (Doc. 172). For the reasons below, Plaintiff's Petition (Doc. 172) is GRANTED in part and DENIED in part. The Court awards Plaintiff $81,766.50 in attorneys' fees.

### BACKGROUND

This case began in early 2015 and the facts of it are described in greater detail in earlier opinions. However, there have been multiple rounds of motions to dismiss, motions for judgment, and amended pleadings, so the Court will briefly describe the relevant procedural background. On November 2, 2017, after multiple rounds of substantive briefing, Plaintiff Andrea Favela filed her second Amended Complaint against Defendant Jeffrey Boyd ("Boyd") and Defendant RICSO. Doc. 77. Plaintiff alleged two 42 U.S.C. § 1983 ("§ 1983") claims for violations of her rights to substantive due process and equal protection and state law claims for:

1

willful and wanton conduct; intentional infliction of emotional distress ("IIED"); respondeat superior; and indemnification.

This Court granted RICSO's Motion to Dismiss Plaintiff's respondeat superior claim and Plaintiff's personal capacity indemnification claim based on Plaintiff's willful and wanton claim. Doc. 85. Plaintiff withdrew her willful and wanton claim prior to trial. Plaintiff eventually proceeded to trial on a theory of *Monell* liability against RICSO regarding her § 1983 claims. This Court granted RICSO's Motion for Judgment as a Matter of Law as to *Monell* liability and ruled against Plaintiff on her substantive due process claim. However, the Court left the issue of indemnification based on "scope of employment" to the jury. On October 9, 2020, after a five-day trial, a jury returned a verdict in the favor of Plaintiff and against Boyd on her equal protection – class of one and state law IIED claims. The jury found in favor of RICSO and against Plaintiff on the issue of scope of employment. Additionally, the jury awarded Plaintiff $75,000 in compensatory damages for emotional distress and $225,000 in punitive damages against Boyd. Doc. 154. This Court denied Plaintiff's subsequent Motion for Partial Judgment as a Matter of Law or a Partial New Trial as well as Boyd's post-trial motions. Docs. 167; 168. No party to this litigation has appealed the Court's rulings or denial of the post-trial motions.

On January 25, 2021, after the Court granted Plaintiff's two motions for extensions of time, Plaintiff filed a Petition (Doc. 172) for an award of attorneys' fees[1] pursuant to 42 U.S.C. § 1988. Plaintiff requests $373,735 in total fees, representing 648.9 hours of Amanda Yarusso's ("Yarusso") time at a rate of $450.00 per hour, 79.4 hours of Larry Jackowiak's ("Jackowiak") time at a rate of $450 per hour, and 115 hours of Sara Garber's ("Garber") time at a rate of $400.00 per hour. Due to the ambiguity in Plaintiff's Petition, RICSO filed a Motion (Doc. 174)

---

[1] Costs have already been taxed against Boyd by the Clerk's office in the amount of $5,493.67 because Boyd did not object within 14 days. Therefore, costs are not at issue in this opinion.

for Clarification because Plaintiff's did not identify whom the fee petition is to be levied against yet included work completed on her claims against RICSO. Plaintiff promptly filed a Response (Doc. 175) to RICSO's Motion.

### DISCUSSION

Under 42 U.S.C. § 1988(b), a district court "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee" in a 42 U.S.C. § 1983 action. "[A] prevailing party should ordinarily recover [attorneys' fees] unless special circumstances would render such award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). However, a determination of fees "should not result in a second major litigation." *Id.* at 437. When afforded the opportunity to clarify her Petition, Plaintiff conceded that "Plaintiff was the prevailing party against Defendant Jeffrey Boyd and Plaintiff's fee petition, to the extent it is granted, is enforceable and collectable as to Defendant Boyd." Doc. 175, at 1. However, rather than explicitly admitting Plaintiff did not prevail against RICSO, Plaintiff argues that her "fees incurred responding to Defendant RICSO's motions were necessarily incurred to proceed to trial and persist in her claims against Defendant Boyd." *Id*. Plaintiff's Petition and Response confirm that she requests attorneys' fees based on work relating to RICSO. To the extent Plaintiff seeks to recover anything from RICSO directly, her motion is denied. Based on the Court's prior rulings and the jury's verdict, Plaintiff only prevailed against Boyd, not RICSO. Despite Plaintiff's burden of proof and two opportunities to explain, she omits any legal basis for awarding her fees against Boyd for work performed litigating her claims against RICSO. *See* Docs. 172; 175. Therefore, the Court cannot grant this Petition for the amount Plaintiff requests.

Further, this case and extensive briefing has gone on long enough. The Court sees no reason to allow Plaintiff a third opportunity to explain why she is entitled to more fees based on

RICSO's presence in the lawsuit. Rather than dismissing Plaintiff's request outright, the Court has made every effort to arrive at a just result for awarded attorneys' fees. Had Plaintiff removed excessive time entries or adequately explained the basis for her recovery, the Court would not be in this position. As discussed below, the driving factor in the Court's decision to reduce Plaintiff's recovery is based on her limited success in this litigation and that this litigation has primarily been a (losing) battle between Plaintiff and RICSO.

### A. Lodestar Calculation and Departure

Because there is no precise formula for awarding fees, district courts have discretion in making this determination, such as identifying specific hours that should be eliminated, or reducing the award due to limited success. *Hensley*, 461 U.S. at 436-37. Typically, courts start by "using the lodestar method (multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended) and then adjusting that figure to account for various factors, including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019) (citing *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009); *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)). Although the lodestar figure is presumptively reasonable, it "may be excessive when 'a plaintiff has achieved only partial or limited success[.]'" *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (quoting *Hensley*, 461 U.S. at 436). Here, Plaintiff's proposed lodestar figures are "excessive" for a number of reasons.

Plaintiff spent the majority of her Petition arguing for the respective hourly rates that should be attributed to counsel, so the Court begins with those rates. Notably, when it comes to counsel's fees, this is one of the most thorough submissions from counsel in this case. Yet, the

Court finds Plaintiff did not met her burden to establish the requested hourly rates. If the fee applicant seeking an award fails to carry her burden of establishing the market rate for counsel's work, then the district court can independently determine the appropriate rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). While this litigation spanned several years, most of the billing occurred from 2015-2017, with 2016 being the year Yarusso and Jackowiak billed the most. However, Boyd has not objected to the calculation of applicable rates for counsel. Therefore, the Court will apply counsel's current market rate. *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use either of these two methods—current rates or past rates with interest—as acceptable compensation for the delay in payment of fees."). *See also Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *16 (N.D. Ill. Apr. 16, 2012) (rejecting defendants' request to apply different hourly rates for each of the nine years of litigation in a civil rights case). In determining the market rate, an "attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (internal quotation marks omitted). The next best evidence in determining any market rate is "evidence of rates similarly experienced attorneys in the community *charge paying clients* for similar work and evidence of fee awards *the attorney* has received in similar cases." *Id*. (emphasis added).

      Plaintiff has not provided evidence of the rates that Yarusso, Jackowiak, and Garber have billed paying clients for similar cases. Instead, Plaintiff relies on the category of "next best evidence" by providing affidavits from other attorneys and citing to previous fee awards. For Yarusso's purported market rate, Plaintiff compares Yarusso to attorney Louis Meyer, a partner with Meyer & Kiss, LLC, who has litigated numerous civil rights cases in the Central District of

5

Illinois for years. Plaintiff cites to a 2019 case where a court found a rate of $400/hour was a reasonable hourly fee for Meyer. However, Plaintiff seeks an hourly rate of $450 for Yarusso because her last established § 1988 fee award[2] was $350 per hour in *Gibson v. City of Chicago*, 873 F.Supp.2d 975, 985 (N.D. Ill. 2012), and it has been many years since that case. Doc. 172, at 8. A fee awarded to counsel in a similar case is relevant but "each court should certainly arrive at its own determination as to a proper fee." *Spegon*, 175 F.3d at 557 (internal quotations marks and citation omitted). However, Plaintiff has not presented evidence where a court has found $450 per hour was appropriate in a similar case.[3] Nor has counsel presented billing records where she or a similar attorney has charged a paying client $450 per hour for a similar case. Moreover, Meyer, a well-regarded attorney in the Central District, did not attest that he bills at $450, but rather notes that he will request it in 2021. *See e.g.*, *Barn II, Inc. v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-01184-JEH, 2019 WL 4266520, at *4 (C.D. Ill. Mar. 22, 2019) (awarding Meyer attorneys' fees at $400 per hour). Thus, the Court does not see how it would be appropriate to make a leap from $350 to $450 for Yarusso. Plaintiff has not met her burden to support a rate of $450 for Yarusso or show that Yarusso has a similar reputation and experience to Meyer. In considering Meyer's affidavit, Yarusso's fee awards in previous cases and the time since then, and her experience, the Court finds $390 is an appropriate market rate for Yarusso in this case.

---

[2] Although Plaintiff's Petition is not entirely clear as to what Yarusso regards as her last established rate. It seems based on Yarusso's affidavit, her last established rate was in *Smith v. Altman*, No. 12 C 4546, 2015 WL 5675376, at *6 (N.D. Ill. Sept. 21, 2015) at the same hourly rate of $350. Yarusso also cites *Giljen v. City of Chicago, et al.*, 15 C 10388, but that appears to be an instance where the parties settled the total attorneys' fees amount.
[3] For example, counsel cites to *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266 (N.D. Ill. Nov. 14, 2012), but that case is not comparable for a number of reasons. *Jimenez* involved a defendant whose conviction for murder was vacated after sixteen years in prison and the jury awarded him $25 million. *Id.* at *1. The Court found Plaintiff "amply justified" the proposed hourly rate of $450 and noted the court "observe[d] Kanovitz in action in other cases, primarily the aforementioned *Young* case, in which he served as principal counsel for a class of over 300,000 Cook County pretrial detainees and obtained an extraordinary result on their behalf. Kanovitz's written, oral, and trial advocacy skills are top-notch." *Id.* at *3. Likewise, the Court acknowledges *Norton v. City of Springfield*, 281 F. Supp. 3d 743, 752 (C.D. Ill. 2017), but disagrees that it is comparable based on the different nature of that case and difference in attorney Mark Wienberg's experience and work involved in that case.

As to Jackowiak's rate, Jackowiak attests that his current billing rate is $450 per hour, which includes civil rights cases. However, he does not provide evidence to support that rate, therefore it is not "presumptively appropriate" to use $450 as Jackowiak's market rate in this case. *See Spegon*, 175 F.3d at 556 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984) ("An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services.")). Jackowiak does cite to his awarded rate of $395 per hour in *Gibson*, 873 F.Supp.2d at 975, which the Court considers. Additionally, Jackowiak is the most experienced of the attorneys involved in this case. He has 25 years of experience, has tried over 100 cases, and specializes in civil rights with a focus on police misconduct. Considering Jackowiak's last established rate and his experience, the Court finds $425 per hour is a reasonable rate for Jackowiak in this case.

As to Garber, she has been practicing for 10 years but her § 1988 rate has never been established. She seeks $400 per hour but has not provided her current billing rate. Instead, she has submitted two affidavits, one from attorney Melinda Power, and another from attorney Julie Herrera. As to Power, the Court considers her affidavit but does not find her work comparable as her experience spans 40 years and is much more extensive than Garber. Based on the affidavits, Garber has less experience in this area than Herrera. Herrera has tried 14 civil rights cases to a verdict and Garber tried three cases to the verdict prior to this case. Additionally, Herrera has two more years of experience. Moreover, Herrera asserts that she bills $400 but does not provide evidence of such or point to a similar case where a court awarded her $400 per hour. In considering the above, the Court finds $350 is a reasonable market rate for Garber's services in this case. Based on the adjusted calculations above, the total fee amount for each attorney is now $253,071 for Yarusso's time, $33,745 for Jackowiak's time, and $40,250 for Garber's time.

In addition to considering the reasonableness of counsel's hours and rate, district courts must consider the "degree of success" obtained in determining whether it should adjust the fee upward or downward. *Hensley*, 461 U.S. at 434-36. The degree of success is crucial where the party only succeeded on some of his claims for relief. *World Outreach Conference Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018) (affirming the district court's 70% across-the-board reduction of attorneys' fees). In those situations, the court must address whether "plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded" and whether "plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434.[4] "No algorithm" exists for adjusting an award of attorneys' fees to reflect partial or limited success, *Richardson v. City of Chicago,* 740 F.3d 1099, 1103 (7th Cir. 2014), so "the [C]ourt must use its equitable judgment to adjust the fee award." *Murphy v. Smith*, 864 F.3d 583, 586 (7th Cir. 2017). *See e.g., Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001) (affirming the district court's $16,285 off-the-top reduction and 50 percent limited-success reduction).

The most glaring issue with Plaintiff's Petition is that she seeks to recover fees based on work against a party she did not prevail against in any capacity. In her Petition, Plaintiff addressed the success of the litigation by arguing that she was "one-hundred percent successful." Doc. 172, at 2. The Court disagrees. Plaintiff lost her claims against RICSO based on the Court's

---

[4] In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal.1974). The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Id.* at 434-35.

rulings and the jury's verdict. Yet, Plaintiff continues to express her disappointment that "RICSO avoided liability and financial responsibility." *Id*. If Plaintiff still persists that RICSO should have been liable, then she could have filed an appeal in the Seventh Circuit Court of Appeals. Plaintiff has not done so, therefore any insinuation that Plaintiff should have prevailed against RICSO rings hollow. Sour feelings towards the outcome of a case are not a basis for awarding statutory fees. After losing her post-trial motion, Plaintiff attempts to recover for her efforts against RICSO by having Boyd pay for it. The Court notes Plaintiff has not indicated whether she attempted to negotiate or settle costs and attorneys' fees with Boyd. *See Hensley*, 461 U.S. at 437 (emphasizing that litigants should attempt to settle attorneys' fees).

      At trial, Plaintiff essentially had five claims: an equal protection claim, a substantive due process claim, a *Monell* claim, an IIED claim, and an indemnification claim. The equal protection claim, due process claim, and IIED claim all pertained to Boyd's actions whereas the indemnification and *Monell* claims pertained to RICSO. The Court recognizes some overlap in the claims but the liability of RICSO was separate from Boyd's liability. Plaintiff could have chosen to only sue Boyd — who was a *pro se* defendant for most of the litigation in this case — or to concede to RICSO's dismissal. Of course, Plaintiff was free to sue these entities but the focus here is the success of the case. Therefore, the Court makes these remarks in the context of considering the amount of fees to award. As Plaintiff pointed out in her Motion, the Court is well-versed in the facts of this case and the length of its litigation. In the Court's view, the complexity and length of this case were largely due to Plaintiff's inclusion of ultimately unsuccessful claims against RICSO. Plaintiff is entitled to some fees based on RICSO, but not to the extent she requests.

Here, Plaintiff did not make a specific damage demand at trial except, as the Court recalls, her request that "punitive damages should be a percentage of the compensatory damages." Therefore, the Court cannot compare Plaintiff's request for damages to her actual recovery in considering her overall success. Further, Plaintiff's post-trial Motion to reincorporate RICSO through a new trial demonstrates she did not achieve 100% success. Plaintiff clearly did not achieve what she vigorously set out to achieve—to hold RICSO liable for Boyd's actions. Municipal liability was a different harm in this case, which involved *Monell* liability and indemnification based on Boyd's personal and official capacities. Thus, these hours were not "expended in the pursuit of the ultimate result achieved." *See Hensley*, 461 U.S. at 435. It is impossible to apportion the time entries so the Court will reduce the overall amount based on the success of the litigation.

The Court recognizes "[e]ven if a motion itself is unreasonable, the [time spent] *working* on it may be compensable if the work later contributes to the party's victory." *Thorncreek Apartments I, LLC v. Vill. of Park Forest*, No. 08 C 1225, 2016 WL 4503559, at *6 (N.D. Ill. Aug. 29, 2016), *aff'd sub nom. Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626 (7th Cir. 2018). In *Thorncreek Apartments I*, the district court refused to credit the plaintiff for any of the 192.25 hours of work it spent on its summary judgment motion. The court concluded the motion mostly dealt with claims the party ultimately lost and the work on one ultimately successful claim was redundant because the plaintiff presented that same evidence in response to the defendants' motion for summary judgment. The court noted the plaintiff would have received partial credit for its summary judgment motion, if it had shown the motion "involved any work that it did not otherwise have to perform and that later contributed to its victory." *Id*. The court further commented "plaintiffs in discrimination suits can almost never present strong enough

evidence to win outright on summary judgment; Thorncreek's motion in particular was a fool's errand, and it behaved unreasonably by spending time litigating it." *Id*. Ultimately, the district court reduced plaintiff's requested recoverable attorney's fees from $1,367,457.50 to $430,999.25, which the Seventh Circuit later affirmed. Similarly here, Plaintiff's unsuccessful pursuit against RICSO for *Monell* liability, indemnification, and respondeat superior did not attribute to her victory against Boyd. Thus, she should not recover for work related to RICSO's briefs involving her failed claims. Counsel has also billed time for her post-trial Motion where she attempted to reincorporate RICSO. Doc. 161. Plaintiff lost her Motion in this Court and she did not appeal to the Seventh Circuit. Therefore, the Court will not award her those fees.

      Like the plaintiff in *Thorncreek*, Plaintiff also filed a Motion for Summary Judgment, which the Court ultimately denied, and counsel presented an oral argument in support of it. The Court cannot ascertain between the time spent on the oral argument and Plaintiff's Motion solely in support of Plaintiff's claims against Boyd versus RICSO. Likewise, the Court cannot parse out the time counsel spent at trial or in preparation for it including related briefing, motions *in limine*, and jury instructions. Therefore, an across-the-board reduction is more appropriate. Plaintiff's Response to RICSO's Motion for Clarification further supports the Court's methodology. She asserts all the evidence, law, and arguments pertaining to her claims against RICSO overlapped with her claims against Boyd. Doc. 175, at 1. Her billing reflects that mentality as it is riddled with time entries pertaining to her failed claims against RICSO.

      Furthermore, aside from the overall success, the Court cannot ignore the reality that most of the litigation involved Plaintiff's unsuccessful attempt to hold RICSO liable for Boyd's actions. Therefore, a departure from the lodestar is necessary. Seeing as this Court has presided over this case for nearly 6 years and can review the docket, the focus throughout the case has

11

been on the liability of RICSO, which is further evidenced by Plaintiff's comment that the facts were largely undisputed in this case. Taking RICSO out of this case, the attorneys' fees would have been substantially less as nearly all the substantive motions were a battle between Plaintiff and RICSO. Again, Plaintiff has not met her burden to show why Boyd should be liable for Plaintiff's fees in attempting to hold RICSO liable. Rather, Plaintiff argues that RICSO caused her to do more work. She is correct in that RICSO forced to her litigate why it should be responsible for any judgment. RICSO repeatedly objected to the *Monell*, respondeat superior, and indemnification claims but hardly ever addressed the underlying § 1983 claims or state law claims specific to Boyd. Instead, RICSO maintained "Plaintiff may have a strong suit against Boyd, but given the nature of her claims, it is one she can pursue against him individually and without the Sheriff or County and by extension the tax payers bearing financial responsibility for his actions." Doc. 82-1, at 14.

The Court disagrees with Plaintiff's characterization that RICSO forced more work on Plaintiff in pursuit of her successful claims against Boyd. Aside from RICSO's Motion for Judgment as a Matter of Law at trial, the only other time RICSO addressed the claims directly against Boyd was in RICSO's early Motion for Summary Judgment in 2016. However, Boyd also filed a summary judgment motion at that time and both motions were mooted so that Plaintiff could amend her complaint to cure a pleading deficiency. Doc. 67. After that, unlike RICSO, Boyd did not file any further substantive motions until his motions *in limine* before the October 2020 trial. Rather than filing another motion for summary judgment, Boyd chose to respond to Plaintiff's Motion. In RICSO's Motion for Judgment as a Matter of Law when it was at the final stage of facing potential financial liability for Boyd's conduct, it addressed Plaintiff's underlying § 1983 claims specific to Boyd. Doc. 148. In dubbing Plaintiff's suit as a "run-of-the-

mill tort claim," RICSO argued Plaintiff could not establish a fundamental constitutional right that was violated or establish Boyd's discriminatory, rather than "sexual attraction" intent. *Id.* at 4. The Court further disagrees that RICSO's refusal to settle Plaintiff's unsuccessful claims against it entitles Plaintiff to more fees. *See* Doc. 172, at 2.

Additionally, aside from Plaintiff's attempt to hold RICSO liable for Boyd's actions, the issues presented were not particularly complex. Even Yarusso remarked in her affidavit in support of this Petition that this case did not involve extensive medical evidence, which could have made the presentation of evidence more difficult. The *Monell* theory of liability and varying indemnification theories posed the most complex issues, such that the Court provided Plaintiff ample opportunities to fully present these issues. Although this is not a case involving joint and several liability, when looking to culpability RICSO did not have a role in Boyd's personal actions against Plaintiff.

**B. Additional Considerations**

The Court has an obligation to "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Hensley*, 461 U.S. at 434. Moreover, the Seventh Circuit has repeatedly frowned upon the fact that "lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Spegon*, 175 F.3d at 554 (quoting *Ustrak v. Fairman*, 851 F.2d 983, 986-87 (7th Cir. 1988)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Thorncreek Apartments I*, No. 08 C 1225, 2016 WL 4503559, at *6 (refusing to credit counsel for work that did not clearly indicate it was related to the suit). Just like an attorney in private practice, counsel is expected to exclude hours that are "excessive, redundant, or otherwise unnecessary" from a § 1988 fee submission. *Hensley*, 461 U.S. at 434. *See*

*Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."). Therefore, a district court has broad discretion to strike vague and unjustified billing entries "or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). *See also Montanez*, 755 F.3d at 556 (affirming the district court's reduction from $426,000 to $108,350.87 in attorneys' fees, which included hourly rate reductions, billing entry reductions, and a 50% across-the-board reduction).

Plaintiff's Petition includes numerous time entries for clerical work. Courts can disallow hours billed by counsel for tasks "that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553, and it may reduce the hours if the supporting timesheet documentation is inadequate. *Hensley*, 461 U.S. at 433. *See also Thorncreek Apartments I*, No. 08 C 1225, 2016 WL 4503559, at *5 (disallowing time entries for filing appearances, reviewing the court docket, and sending a letter to opposing counsel with an appearance). Other courts have found clerical duties include: "organizing file folders, preparing documents, copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters." *Montanez v. Chicago Police Officers Fico (Star No. 6284), Simon (Star No. 16497)*, 931 F. Supp. 2d 869, 884 (N.D. Ill. 2013), *aff'd sub nom. Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2014). Here, the Court will not discuss time entries line-by-line. Instead, the Court finds counsel should not be credited for the following entries: instructing a law clerk regarding travel plans, multiple entries for reviewing the local rules, scheduling depositions, discussing travel plans with a law clerk, reviewing the docket, preparing copies of documents, emailing the court reporter for transcripts,

sending emails on accessing PowerPoint files, calling to the Court to check the status of ruling on a motion. Additionally, counsel should not be credited for filing numerous motions for extensions of time on substantive motions.

Courts can also reduce awards where the collaboration among attorneys has led to duplicative work and excessive billing. *See Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857-58 (7th Cir. 2009) ("[D]istrict courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees."). The Court notes there is work that appears to be duplicative between Jackowiak and Yarusso, however, the Court declines to scrutinize these entries line-by-line but considers it in the totality of surrounding circumstances.

In some circumstances, a prevailing party may also recover fees-on-fees. *See Ustrak v. Fairman*, 851 F.2d 983, 987-90 (7th Cir. 1988). *Cf. Smith v. Rosebud Farm, Inc.*, No. 11-CV-9147, 2018 WL 4030591, at *17 (N.D. Ill. Aug. 23, 2018) (declining to award fees-on-fees based on numerous billing deficiencies and Plaintiff's choice to only exclude 0.6 hours from his claimed hours, which the court found to be "an astounding lack of billing judgment"); *Sommerfield v. City of Chicago*, No. 06 C 3132, 2017 WL 3675722, at *6 (N.D. Ill. Aug. 25, 2017) (exercising its discretion to reject fees-on-fees where the counsel "piled on the hours" in the case that led to unnecessary work "affecting the due administration of justice"). Here, the Court has already discussed numerous deficiencies and Yarusso in particular does not appear to have "judiciously billed" despite the assertion in her affidavit. Doc. 172-2, at 7. Even in Plaintiff's Petition, counsel has caused unnecessary work by failing to provide adequate legal support for all of the fees she requests. Attorneys are expected to practice restraint in billing and costs or fees petitions. Moreover, the defendant in this case who will be responsible for these

fees, Boyd, is *pro se*. In considering all of the circumstances surrounding this case and the lack of billing restraint, the Court declines to award fees-on-fees here.

Considering the number of hours counsel billed for drafting this Petition, the Court is unclear as to why the above fees were not parsed out for reduction or why the Court had to scour the caselaw to find support for Plaintiff's requests. For example, Plaintiff did not address or cite a single case in support of why she is entitled to recovery based on the state law IIED claim as well, which was arguably the crux of her case. Section 1988 does not directly authorize fee recovery for state-law claims. *Murphy*, 864 F.3d at 587. However, a party may recover fees for a state law claim if it is sufficiently related to the successful federal claim. *Id*. Plaintiff's IIED claim was similar to her equal protection claim to the extent it was based on Boyd's harassing conduct, therefore Plaintiff is entitled to fees for it.

Finally, the Court reiterates the Seventh Circuit's observation in *Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980). There, the Seventh Circuit held if courts were required to award attorneys' fees "when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they *should have* asked for in the first place." *Brown*, 612 F.2d 1057 (7th Cir. 1980) (affirming the denial of a request for attorneys' fees in its entirety because it was "outrageously excessive" and counsel should "submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees") (emphasis added). Likewise, although not as extreme as *Brown*, if the Court were to award Plaintiff significantly more fees for all of her work regarding RICSO, claimants would be encouraged to fight to keep parties in litigation in an effort to boost fees or request fees for parties unrelated to the successful claims with the hopes that a court may overlook this fact when

reviewing the timesheet or simply reduce it. Either way, attorneys should not be incentivized to more aggressively bill or litigate attorneys' fees. The Court does not reject Plaintiff's request in its entirety, but substantially reduces it.

Accordingly, based on Plaintiff's limited success in the case as well as the considerations the Court has described above, a 75% across-the-board reduction is warranted. Therefore, based on the modified lodestar and departures, Plaintiff is awarded the following against Defendant Boyd only: $63,267.75 for Yarusso; $8,436.25 for Jackowiak, and $10,062.50 for Garber for a total of $81,766.50 in attorneys' fees.

## CONCLUSION

For the reasons set forth above, Plaintiff's Petition (Doc. 172) is GRANTED in part and DENIED in part and RICSO's Motion (Doc. 174) is GRANTED.

Signed on this 2nd day of March, 2021.

> s/ James E. Shadid
> James E. Shadid
> United States District Judge